IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

BEAUFORT DIVISION

| | |
|---|---|
| Dorothy L. Smith,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of<br>Social Security,<br><br>    Defendant.<br>_____ | Civil Action No. 8:06-3244-CMC-BHH<br><br><br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

  This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

  The plaintiff, Dorothy Smith, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration regarding her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

### RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

  The plaintiff was 50 years old as of June 30, 1998, her date last insured. (R. at 77.) She has a high-school education and went to cosmetology school. (R. at 102.) Before July 1, 1995, the date she alleges disability, the plaintiff worked as a babysitter, hairdresser, assembly line worker and telephone operator. (R. at 109-13.) Her job as a telephone operator, which she held from 1989–1991, required no walking, standing, climbing, or lifting. (R. at 111.)

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

The plaintiff filed a claim for DIB on March 21, 2001, alleging that she had been disabled since July 1, 1995, due to coronary artery disease, severe bladder incontinence, high blood pressure, anxiety and depression, a hiatal hernia, shortness of breath, and angina. (R. at 77-79, 96.) The plaintiff's applications were denied initially and upon reconsideration. (R. at 65, 66.) A hearing was held on September 18, 2002. (R. at 33-63.) On January 22, 2003, the ALJ found that the plaintiff was not disabled on or before June 30, 1998, because she could perform other work in the national economy. (R. at 19-30.) On November 7, 2004, the Appeals Council affirmed. (R. at 5-7). The plaintiff sought judicial review of that decision.

The undersigned United States Magistrate Judge recommended that the Commissioner's decision be reversed under sentence four of 42 U.S.C. § 405, and remanded to the Commissioner for further proceedings. (R. at 459-473.) The United States District Court ordered remand of the decision to the Commissioner. (R. at 477-478.) The undersigned recommended remand on three grounds: (1) "to give the Commissioner the opportunity to indicate explicitly why the new, additional evidence [submitted to the Appeals Council][2] does not suffice as a basis for changing the ALJ's decision" (R. at 468); (2) to obtain the assistance of a medical advisor in determining whether plaintiff was disabled in June 1998, the onset date of disability (R. 468-469); and (3) because the undersigned found that substantial evidence did not support the ALJ's credibility determination, and further consideration of "the effect of plaintiff's physical and mental limitations on her ability to function" was required. (R. at 470-471.)

A second hearing was held on November 30, 2005. (R. at 389-447.) The ALJ again found that the plaintiff was not disabled on or before June 30, 1998 because she could perform her past "sedentary work" as a telephone operator. (R. at 363-378). In the second decision, the ALJ concluded that Dr. Louis Browne's June 2003 statement was "not supported by medically acceptable clinical and laboratory diagnostic findings," and was

---

[2] The additional evidence consisted of a statement by Lewis Browne, M.D., dated June 19, 2003. (R. at 348, 465).

2

inconsistent with "the substantial evidence, including the medical expert testimony of Dr. Chisholm, which shows no significant cardiac impairment prior to 2000." (R. at 376.) Dr. Chisholm, a pediatrician, testified as a medical expert at the hearing with respect to the effects of the plaintiff's impairments on her functioning through June 30, 1998. In the second decision, the ALJ appears to have relied on that testimony in finding that the plaintiff could perform sedentary work during the time period at issue. (R. at 373, 416-30, 441-443.) In the second decision, the ALJ also re-evaluated the plaintiff's credibility. (R. at 374-75.)

The Appeals Council denied the plaintiff's request for a review of the ALJ's second decision, (R. at 350-362), thereby making the ALJ's second decision the Commissioner's final decision for purposes of judicial review.

The ALJ made the following findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is *insured for benefits through June 03, 1998, but not thereafter.*

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. On or prior to June 30, 1998 claimant's coronary artery disease and osteoarthritis are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. I find the claimant's allegations regarding her limitations for the period on or prior to June 30, 1998 are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity as set out above.

7. On or prior to June 30, 1998, the claimant's past relevant work as a telephone operator did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR § 404.1565).

8. On or prior to June 30, 1998, the claimant's medically determinable impairments, as set out above, would not prevent her from performing her past relevant work.

9. The claimant was not *under a "disability,"* as defined in the Social Security Act, at any time *on or before June 30, 1998* (20 CFR § 404.1520(f)).

(R. at 377 (emphasis in original).)

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform

4

alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to give proper weight to the opinions of her treating and examining physicians and improperly substituting his opinion for those of

the medical experts; (2) making a finding that the claimant was not disabled on her date last insured despite the lack of substantial evidence to support that finding; and (3) failing to make a residual functional capacity assessment based on all of the relevant evidence and failing to provide an adequate explanation for his conclusion.  The Court will address each alleged error in turn.

**I.    TREATING PHYSICIANS**

The plaintiff first contends that the ALJ failed to give the opinions of her treating and examining physicians controlling authority.  The plaintiff alleges that the ALJ erred by giving little weight to the opinion of Dr. Louis Browne, the plaintiff's long-term treating family practice doctor.  In June 2003, Dr. Browne characterized the plaintiff's condition as severe "both before and after June 1998." (R. at 372.) Dr. Browne described the plaintiff as having "had a long history of cardiac problems, including inferior, anterior, and apical heart defects documents by [a] thallium stress test as early as 1994; unstable angina pectoris in 1997 documented by angiography which showed multiple stenotic cardiac arteries and anterior wall hypokinesis."  (R. at 348.)  On August 16, 2006, as part of the additional evidence submitted to the Appeals Council, Dr. Browne stated that the plaintiff had numerous health problems, many of which predated 1998.  (R. at 356.)  He stated that she suffered from cardiovascular problems, stress incontinence and hypertension prior to 1998, and that in 1997 her heart functioned "poorly enough to restrict her to sedentary work at best." (R. at 356.)  Dr. Browne indicated that before 1998, the plaintiff "would not have been able to perform work that required anything more than basic one and two step processes."  (R. at 356.)  He also stated that he often did not mention the plaintiff's cardiac and emotional problems in his office notes because "[i]n a family practice, time is limited."  (R at  356.) Dr. Brown concluded that her heart functioned "poorly enough to restrict her to sedentary work at best."  (R. at 356.)  Dr. Browne limited the plaintiff to performing simple one- and two-step instructions because of her psychological impairments, and limiting the plaintiff to not standing and sitting for very long or lifting more than 10 pounds "[i]n light of her angina,

6

osteoarthritis, and obesity." (R. at 276.) Dr. Browne's conclusions are based upon his treatment of plaintiff beginning in 1997 and his conclusions supported by both clinical and laboratory results.

Likewise, in May 2006, Dr. Worthington, a cardiologist and a treating source, stated that he had performed a cardiac catheterization on the plaintiff in March 1997. At that time, the plaintiff's "coronary arteries were somewhat obstructed" and she had a 30-40% obstruction of her left anterior descending coronary artery and right coronary artery, which "while not ideal, would probably produce no serious symptoms." (R. at 358.) Dr. Worthington further stated, with respect to the plaintiff's 1997 coronary catheterization:

> However, her endiastolic pressure on catheterization was significantly elevated. This tells us that her heart muscle was stiff, almost certainly as a result of her chronic hypertension, which she had suffered despite our best efforts to control it. As I indicated then, this abnormal pressure would explain her complaints, which included a limitation to sedentary work at best, and I would expect that she was then limited to sedentary work under the attached definition.

(R. at 358.)

Dr. Chisholm, the medical expert who testified at the second hearing, concluded that the plaintiff had significant emotional complications that probably would limit her ability to handle stress, and cardiac and joint ailments which would limit her to sedentary work. (R. at 424.) Although Dr. Chisholm stated that the cardiac blockages were not present in 1997 and that the records reflected a loss of cardiac function by 2000 as measured by left ventricular function, (R. at 417-418), he also noted that she had had angina for some time, and that the severity of all of her problems "*was not clear to me*, from the medical record" prior to 2000. (R. at 417, 422-23; *see also* R. at 419.)

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. §416.927(d)(2)(2004); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y

7

negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 858, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d at 178 (*citing Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

A "medical opinion" is a "judgment[ ] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). The Commissioner's findings must be affirmed only if substantial evidence supported the decision. *See Blalock*, 483 F.2d at 775.

The court finds that the ALJ's decision is not supported by substantial evidence. On the one hand, the ALJ suggests that Dr. Browne's 2002 opinion only addresses the plaintiff's current limitations (R. at 375-76), yet the ALJ also acknowledges that Dr. Browne has treated her since 1997 (R. at 370), and that Dr. Browne's 2003 statement specifically indicated that her condition was as severe "both before and after June 1998." (R. at 372.) In addition, Dr. Chisholm, the medical expert, stated that a cardiologist would have been likely to recommend "more frequent rest periods" because of her cardiac problems, (R. at 424), a limitation which is consistent with Dr. Browne's opinion but which the ALJ ignores in his decision.

Although the ALJ claimed that he gave little weight to Dr. Browne's opinion, the ALJ appears to have accepted Dr. Browne's diagnoses by finding that coronary artery disease and osteoarthritis, both diagnosed by Dr. Browne (R. at 276), were severe impairments. Not only did the ALJ adopt the treating physician's diagnoses, but he also adopted a restriction to sedentary work as proposed by Dr. Browne. (R. at 356, 276, 358.) For the ALJ to then say that the doctor's opinion is worth little weight, is inconsistent and not supported by substantial evidence.

Furthermore, in his first decision in this matter, the ALJ found that plaintiff must alternate between sitting and standing (R. at 23) apparently because Dr. Browne said that she could not stand or sit for very long. (R. at 276.) The later decision by the same ALJ, which is under review by this court, does not address or include this limitation but generally rejects the source. While not every opinion must be separately addressed, the ALJ must always provide good reasons for rejecting the opinion of a treating physician. 20 C.F.R. 404.1527(d)(2). As the Fourth Circuit recently observed in *Hines v. Barnhart*, 453 F.3d 559, 653 (4th Cir. 2006), "Courts typically accord greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (internal quotations, citations, footnote omitted). The opinion of a claimant's treating physician should be given great weight and may be disregarded only if there is persuasive contradictory evidence. *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996) (citing *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987)). In the present case, the ALJ's decision is not supported by substantial evidence, and is incorrect under controlling law.

**II.     The Plaintiff's Mental Impairments**

In the 2003 decision, the ALJ discussed Dr. Browne's opinion that the plaintiff was limited to one- and two-step processes, and found the plaintiff's mental impairments were not "severe." (R. at 23-24.) The Commissioner argues that the Court, in its earlier Report and Recommendation, found no error in that finding and stated that the ALJ "adequately discussed the evidence and his reasoning for finding the plaintiff's mental impairments to be non-severe" (R. at 470), and that this determination is the law of the case. (Resp. Br. at p. 17.) The court agrees.

It is true that the Report and Recommendation also stated that substantial evidence did not support the ALJ's credibility determination, and further consideration of "the effect of plaintiff's physical and mental limitations on her ability to function" was required. (R. at 470-471.) The latter statement, however, must be read in the context of the discussion of

9

the plaintiff's overall subjective complaint. The court agrees with the Commissioner that the ALJ's finding that the plaintiff's mental impairments were non severe is the law of the case. (R. at 470.)

### III.    Dr. Kopera's Opinion

Dr. Kopera examined the plaintiff in 2001 and found that her ability to function was limited by both her cardiac, pulmonary, and urinary incontinence problems. (R. at 274-275.) The ALJ has improperly discounted this opinion on the grounds that Dr. Kopera's exam was performed more than three (3) years after June 1998 and because his opinion was based on the plaintiff's subjective complaints. First, the Fourth Circuit has held that "medical evaluations made subsequent to the expiration of a claimant's insured status are not automatically barred from consideration and may be relevant to prove a previous disability." *Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987) (citations omitted). Thus, the ALJ erred by "assess[ing] no weight to this opinion." Moreover, the citation by the ALJ to 20 C.F.R. § 404.1527(e) has no relevance to the issue at hand.

Second, there is no evidence to support the ALJ's conclusion that Dr. Kopera's opinion was based on plaintiff's subjective complaints and not upon his own examination. Dr. Kopera performed his own physical exam in addition to taking a medical history. (R. at 374-375.) The ALJ erred by not considering Dr. Kopera's opinion and according it appropriate weight.

### IV.    The Medical Expert–Dr. Chisholm, the Pediatrician

This case was remanded in 2005 to consider the plaintiff's condition prior to 1998 with consultation from a medical advisor to determine the date of onset of disability. The ALJ called Dr. Chisholm, a pediatrician, to testify. It appears that Dr. Chisholm testified by telephone. (R. at 391-392.) Dr. Chisholm introduced himself by stating he was a physician. (R. at 415.) The plaintiff's counsel waived voir dire of Dr. Chisholm. (R. at 416.) Arguably, the plaintiff has waived the argument concerning Dr. Chisholm's particular qualifications and the appropriateness of being called to testify in this case by failing to raise the issue below.

*See Stacy v. Chater*, 1995 WL 691954, at *2 (4th Cir. November 22, 1995) (Table) (per curiam) (citing *Pleasant Valley Hosp. Inc. v. Shalala*, 32 F.3d 67, 70 (4th Cir. 1994) (finding that failure of appellant to raise issue during administrative hearing and before district court operates as a waiver by the appellant of appellate review)); *see also Director, Office of Workers' Compensation Programs, etc. v. North American Coal Corp.*, 626 F.2d 1137, 1143 (3d Cir. 1980) ("[A] court should not consider an argument which has not been raised in the agency proceedings which preceded the appeal, absent unusual circumstances."). Nevertheless, the court finds that "unusual circumstances" are present which are cause for concern. Specifically, Dr. Chisholm did not have before him, prior to or at the hearing, all of the records that had been submitted to the Appeals Council, although the records were summarized at the hearing. (R. at 396-397.) Given these circumstances, Dr. Chisholm was not qualified to render an expert opinion on the effects of plaintiff's impairments.

**V.     The Effects of Obesity and Incontinence on the Plaintiff's Residual Functional Capacity**

Residual functional capacity is a determination, based on all of the relevant medical and non-medical evidence, of what a claimant can still do despite her impairments; the determination of the residual functional capacity is the responsibility of the ALJ. *See* 20 C.F.R. §§ 404.1520, 404.1545-46; SSR 96-8p. Here, the plaintiff contends that the ALJ failed to evaluate the effects of obesity and incontinence on her ability to work.

The plaintiff's obesity was documented as early as 1994. (R. at 139.) Social Security Ruling 02-1p defines obesity as a "complex, chronic disease characterized by excessive accumulation of body fat." SSR 02-1p. The Ruling recognizes obesity can cause limitations in all exertional and postural functions. *See id.* It recognizes that obesity makes it harder for the chest and lungs to expand. *See id.* Obesity forces the respiratory system to work harder to provide oxygen to the body, in turn making the heart work harder to pump blood and carry oxygen to the body. *See id.* The Ruling recognizes obesity can increase the severity of coexisting or related impairments, including musculoskeletal disorders. *See*

*id.* The ALJ should consider a claimant's obesity in making a number of determinations, including whether the individual has a medically determinable impairment, the severity of the impairment, whether the impairment meets or equals the requirements of a listed impairment, and whether the impairment prevents the claimant from doing his past relevant work or other work in the national economy. SSR 02-01p, at *3.

The ALJ failed to properly consider the plaintiff's obesity in making each of these determinations. While the decision acknowledges that the plaintiff was found to be obese by three (3) different doctors (R. at 369, 371), the ALJ fails to include any discussion of the effect of her obesity on her ability to function. As mentioned above, when obesity is found to be a medically determinable impairment, as it is here, the ALJ must consider any functional limitations which result from the obesity in the RFC. SSR 02-01p. The ALJ failed to do so.

Second, SSR 02-01p also recognizes that the "combined effects of obesity with other impairments may be greater than might be expected without obesity." SSR 02-01p. The ALJ, however, failed to evaluate the effect that the plaintiff's obesity would have on her impairments which he deemed severe (her cardiovascular disease and osteoarthritis). Dr. Browne concluded that the plaintiff's angina, osteoarthritis and obesity would make it difficult for her to lift more than 10 pounds and stand or sit for long periods of time. (R. at 276.) The ALJ ignores this finding, and contrary to the mandate of the Ruling, fails to explain how he reached his conclusion that plaintiff's obesity has no effect on her ability to function.

The ALJ also failed to evaluate the effect that the plaintiff's incontinence would have on her ability to work. Although the ALJ acknowledged that the plaintiff was treated for stress incontinence in 1996 (R. at 369), and that she continued to complain of incontinence in 1998 and 2002 (R. at 370, 371), the ALJ failed to evaluate the effect that this impairment would have on her ability to work. Dr. Kopera, a specialist in physical medicine and rehabilitation opined that "[she] appears limited from a functional status, from both her

cardiac and pulmonary standpoint . . . and her current level of urinary incontinence further limits her ability to deal with the public." (R. at 275.) The plaintiff testified that she found it stressful not to be able to go to the bathroom when she was a telephone operator. The ALJ's failure to consider this impairment in assessing plaintiff's residual functional capacity is reversible error.

## VI.   Award of Benefits

The Court faces the question whether to remand or reverse the decision of the Commissioner. Certainly, an award of benefits is more appropriate when further proceedings would not serve any useful purpose. *See Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987)*; Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1985). Likewise, an award of benefits is appropriate when substantial evidence on the record as a whole indicates that the claimant is disabled, and the weight of the evidence indicates that a remand would only delay the receipt of benefits while serving no useful purpose, or a substantial amount of time has already been consumed. *See Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir. 1984); *Tennant v. Schweiker*, 682 F.2d 707, 710 (8th Cir. 1982).

The plaintiff's action for DIB benefits has been pending since March 21, 2001. Her applications were denied at all administrative levels, and a hearing was held in September 2002. The final decision of the Commissioner was not rendered until November 2004. This Court remanded the matter in April of 2005. A second hearing was had before the ALJ in November 2005. Two years later, and seven years all told, the plaintiff still has no resolution of her claim for benefits. This represents a significant period of time with respect to this claimant who is now sixty years old. "People generally do not seek Social Security disability benefits . . . because they want to subsidize an already comfortable existence. In many cases, they seek benefits because they have nowhere else to turn." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 524 (D. Md. 2002).

Where no useful purpose would be served by a remand and, in fact, justice would not be served by such an outcome, outright reversal is justified. *Coffman*, 829 F.2d at 519.

The facts of this case justify such a reversal. The opinion of the treating physician constitutes substantial evidence to conclude that the plaintiff is disabled. The continued presence of legal errors in the defendant's consideration of this matter after nearly 7 years of administrative and legal processes makes it clear that remand would serve no useful purpose. The plaintiff, therefore, is entitled to the benefits she seeks.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this Court concludes that the ALJ's findings are not supported by substantial evidence and that substantial evidence demonstrates that the plaintiff is disabled. Accordingly, this Court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §§405(g) and 1383(c)(3) and that the case be remanded to take appropriate action regarding an award of DIB benefits to the plaintiff based on the disability alleged to have commenced on July 1, 1995.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks<br>United States Magistrate Judge

February 15, 2008
Greenville, South Carolina